IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY INC.,
and SIERRA CLUB,

        Plaintiffs,

     v.                                 CIVIL ACTION NO. 2:15-cv-15515

POCAHONTAS LAND CORPORATION,

        Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

## INTRODUCTION

1. This citizen suit is an action for declaratory judgment, mandatory injunctive relief, and civil penalties against Defendant Pocahontas Land Corporation ("Pocahontas") for discharging pollutants in violation of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA") from at least three unpermitted point sources of pollution in Mingo County, West Virginia.  Those point sources discharge into two unnamed tributaries of Slick Rock Branch and Slick Rock Branch of Pigeon Creek of Tug Fork of the Big Sandy River.  These streams are waters of the United States.

2. As detailed below, Plaintiffs allege that the Defendant, as owner of the point sources, discharged and continues to discharge (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, and (4) selenium, into waters of the United States without a National Pollution Discharge Elimination System ("NPDES") Permit issued pursuant to Section 402 of the Clean Water Act,

33 U.S.C. § 1342, in persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (Clean Water Act citizen suit provision).

4. On October 23, 2014, Plaintiffs gave notice of the violations and their intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5. More than sixty days have passed since notice was served and no state or federal government agency has commenced and diligently prosecuted a civil or criminal action to redress the violations.

6. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District.

## PARTIES

7. Defendant Pocahontas is a Virginia corporation that owns property where the violations complained of in this action have occurred and are occurring.

8. Pocahontas is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

9. At all relevant times, Pocahontas owned a tract or parcel of land on Pigeon Creek of Tug Fork of the Big Sandy River, in Mingo County, West Virginia on which at least three valley fills were constructed during the operations of the White Flame No. 1 Mine. The property containing the valley fills is located on Mingo County tax map sheet 449, parcel 57 in the

Magnolia district. The deed conveying the property containing the valley fill to Pocahontas begins on page 77 of Mingo County deed book volume 288.

10. Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 1,500 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. OVEC has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

11. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

12. Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a nonprofit organization incorporated in West Virginia in 1967. Its volunteer board of directors and approximately 1,500 members work for the conservation and wise management of West Virginia's natural resources. WVHC is dedicated to protecting public lands, clean air, clean water, forests, streams, mountains, and the health and welfare of the people that live in West Virginia and for those who visit to recreate. WVHC works vigorously to enforce the Clean Water

Act especially where current and past mining operations have caused harm to the waters of the state.

13. At least one of Plaintiffs' members suffers injuries to her aesthetic, recreational, and environmental interests as a result of Defendant's unpermitted discharges of total dissolved solids (TDS), sulfates ($SO_4^{2-}$), and other ions associated with the measure of conductivity in surface coal mine drainage, and selenium. For example, Plaintiffs' member Donna Branham lives in Mingo County and has visited in the past and plans to continue to visit Pigeon Creek, including the area receiving Defendant's discharges. Ms. Branham is aware of Defendant's unpermitted discharges from its valley fills and of elevated levels of selenium, TDS, sulfates, and conductivity in the streams receiving those discharges. Ms. Branham knows that the levels of those pollutants observed in the streams receiving Defendant's discharges can harm animals and is concerned about the effects of the unregulated discharges on aquatic life, birds, and other wildlife that rely on healthy streams. Ms. Branham's knowledge of Defendant's unmonitored, unregulated discharges causes her to enjoy the affected waterways less than she would otherwise. Ms. Branham's knowledge of the unregulated discharges causes her to refrain from bringing her grandchildren to enjoy the affected waters in the ways that Plaintiffs' member did when she was a child. If Defendant's unlawful discharges ceased or were properly regulated by a Clean Water Act permit, Ms. Branham would enjoy her visits to the affected waterways more and would be more likely to use them in ways that she now refrains from doing. Injunctions and/or civil penalties would redress Ms. Branham's injuries by preventing and/or deterring future violations.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

17. At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia.  Permits issued under this program are known as "WV/NPDES" permits.

18. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

19. Section 505(f)(1) of the CWA defines "an effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA

20. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil

penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

21. Section 309(d), 33 U.S.C. § 1319(d), provides that any person who violates Section 301, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

22. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. See 40 C.F.R. § 19.4.

23. Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

### *Valley Fills*

24. Valley fills, also known as durable rock fills or hollow fills, are a common feature of Appalachian surface coal mining.

25. Valley fills are a result of the expansion of rock that occurs when mountains are blown up. Excess rock and soil are placed in nearby valleys, covering headwater streams and forming valley fills.

26. Valley fills collect, channel, and convey surface runoff and groundwater.

27. Valley fills are engineered structures. They are designed with a rock core underdrain, to direct water under the fill. They also sometimes have drainage ditches along the sides of the fill or down the center surface. The water percolating through the fill and draining

along the sides and center is discharged at the toe of the fill as surface water.

28. Precipitation and groundwater percolate through overburden on the mine site and valley fill, dissolving minerals in the rock, such that the water discharged out the toe of the fill includes added pollutants.

29. The toes of valley fills lie on surface property and are part of the exposed area of land.

30. Drainage from valley fills is characterized by significantly elevated levels of sulfate ions ($SO_4^{2-}$) accompanied by, among other things, calcium, magnesium, and bicarbonate ions ($Ca^{2+}$, $Mg^{2+}$, $HCO_3^-$), all of which contribute to elevated levels of total dissolved solids (TDS) and conductivity. *See, e.g.*, Bernhardt et al., *How Many Mountains Can We Mine? Assessing the Regional Degradation of Central Appalachian Rivers by Surface Coal Mining*, Environmental Science and Technology, 2012, Vol. 46, p. 8115; U.S. Environmental Protection Agency, *Final Determination of the Assistant Administrator for Water Pursuant to Section 404(c) of the Clean Water Act Concerning the Spruce No. 1 Mine, Logan County, WV*, January 13, 2011, at 58-60.

31. The elevated levels of total dissolved solids (TDS), sulfates ($SO_4^{2-}$), and other ions associated with the measure of conductivity in surface coal mine drainage that are consistently found in the streams that receive discharges from valley fills cause significant adverse impacts to aquatic life communities. *See* Palmer and Bernhardt, *Mountaintop Mining Valley Fills and Aquatic Ecosystems: Scientific Primer on Impacts and Mitigation Approaches*, at 3. Those impacts result in violations of West Virginia's narrative aquatic life water quality standards. *See* 47 C.S.R. §§ 3.2.e and 3.2.i.

### *White Flame No. 1 Mine*

32. Defendant took ownership of a tract of land on Pigeon Creek of Tug Fork, identified as parcel 57 on sheet 449 of the tax map for the Magnolia district of Mingo County, West Virginia (hereinafter "Parcel 57"), under a deed from Royal Land Company to Pocahontas dated December 5, 1986.

33. On or about June 7, 1988, the WVDEP first issued Surface Mining Control and Reclamation Act ("SMCRA") Permit S500988 to White Flame Energy, Inc. for the operation of the White Flame No. 1 Mine on lands including Parcel 57.

34. On or about September 19, 1988, the WVDEP first issued Surface Mining Control and Reclamation Act ("SMCRA") Permit S501288 to White Flame Energy, Inc. for the operation of the White Flame No. 1B Mine on lands including Parcel 57.

35. During the course of operations of the White Flame No. 1 Mine Complex, three valley fills were constructed in the headwaters of Slick Rock Branch of Pigeon Creek of the Tug Fork. The valley fills were constructed and remain on lands within Parcel 57.

36. Fill 1 (see Exhibit 1) was constructed in an unnamed, unmapped tributary of Slick Rock Branch, identified as UMT/Slick Rock Branch RM 0.81 by WVDEP.

37. Fill 2 (see Exhibit 1) was constructed in an unnamed, unmapped tributary of UMT/Slick Rock Branch RM 0.81, identified as UMT/UMT RM 0.05/Slick Rock Branch RM 0.81 by WVDEP.

38. Fill 3 (see Exhibit 1) was constructed in Slick Rock Branch.

39. The three fills are durable rock fills. Durable rock fills are engineered to convey water through underdrains and side drains to the stream channel located at the toe of the fill.

40. During operation of the surface mine, discharges of pollutants from three fills were regulated by WV/NPDES Permits WV1005294 and WV1005227.

41. On or about March 12, 2001, the WVDEP released SMCRA Permit 500988. On or about October 15, 2001, the WVDEP released SMCRA Permit S501288. On or about August 9, 2001, WVDEP released WV/NPDES Permit WV1005227. On or about November 16, 2011, WVDEP released WV/NPDES Permit WV1005294. On information and belief, discharges from the Parcel 57 Valley Fills are no longer authorized or regulated by a WV/NPDES or SMCRA permit.

42. Upon information and belief, the Parcel 57 Valley Fills continue to discharge pollutants, including (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, and (4) selenium, into Slick Rock Branch and its tributaries.

43. The West Virginia Department of Environmental Protection's Watershed Assessment Branch has sampled the water quality in Slick Rock Branch and its tributaries. The locations and results of that sampling were:

| Stream Name | Sample Date | Ancode | Mile Point | Latitiude | Longitude | Parameter | Value | Units |
|---|---|---|---|---|---|---|---|---|
| Slick Rock Branch | 9/3/2009 | WVBST-24-AA | 0.68 | 37.64358 | -82.0633 | Specific Conductance | 1795 | uS or umhos/cm |
| Slick Rock Branch | 9/3/2009 | WVBST-24-AA | 0.75 | 37.64242 | -82.0628 | Specific Conductance | 1807 | uS or umhos/cm |
| Slick Rock Branch | 9/3/2009 | WVBST-24-AA | 0.9 | 37.6418 | -82.0601 | Specific Conductance | 1995 | uS or umhos/cm |
| UMT/Slick Rock Branch RM 0.81 | 9/3/2009 | WVBST-24-AA-1 | 0.07 | 37.64105556 | -82.06305556 | Specific Conductance | 1192 | uS or umhos/cm |

| UMT/UMT RM 0.05/Slick Rock Branch RM 0.81 | 9/3/2009 | WVBST-24-AA-1-A | | 37.64111111 | -82.062475 | Specific Conductance | 1472 | uS or umhos/cm |
|---|---|---|---|---|---|---|---|---|
| Slick Rock Branch | 10/23/2013 | WVBST-24-AA | 0.1 | 37.65147 | -82.0626 | Se Total | 0.0084 | mg/L or ppm |
| Slick Rock Branch | 10/23/2013 | WVBST-24-AA | 0.1 | 37.65147222 | -82.06258333 | Sulfate | 587 | mg/L or ppm |
| Slick Rock Branch | 10/23/2013 | WVBST-24-AA | 0.1 | 37.65147222 | -82.06258333 | TDS | 1260 | mg/L or ppm |

44.     On December 12, 2012, and November 15, 2013, a water sampler hired by Sierra Club took water samples approximately three-quarters of a mile downstream of the discharges from the Parcel 57 Valley Fills. Those samples were taken in Slick Rock Branch at the culvert that passes under Musick Bottom Road, just above where Slick Rock Branch enters Pigeon Creek. The results of that sampling effort were:

| Sample ID | Date | Conductivity (µS/cm) | Sulfates (mg/L) | Total Dissolved Solids (mg/L) | Selenium (µg/L) |
|---|---|---|---|---|---|
| Slick Rock Branch | 12/12/2012 | 646 | 208 | 416 | 2.28 |
| Slick Rock Branch | 11/15/2013 | 1349 | 512 | 1093 | 5.77 |

45.     The samples from 2009 illustrate that water flows from each of the three fills, carrying pollutants.  There has been no material change to the valley fills or Slick Rock Branch since 2009 that would alter the discharges of pollutants.  Selenium and ionic pollution, as measured by conductivity, do not eradicate themselves over time.  *See* Pond, G. J. et al., *Long-Term Impacts on Macroinvertebrates Downstream of Reclaimed Mountaintop Mining Valley Fills in Central Appalachia*, Environmental Management 1–15 (July 2014).

46.     Slick Rock Branch is listed on the West Virginia 2012 303(d) list as impaired for

selenium. Pigeon Creek, into which Slick Rock Branch flows, is listed on the West Virginia 2012 303(d) list as biologically impaired.

47. No other valley fills drain into Slick Rock Branch and upon information and belief there are no other sources of pollution between the Parcel 57 Valley Fills and the sample location that would account for the pollutant levels measured by Sierra Club's water sampler. Accordingly, plaintiffs allege that the Parcel 57 Valley Fills are discharging (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, and (4) selenium into Slick Rock Branch and its tributaries.

48. Each Parcel 57 Valley Fill is a point source as that term is used in the context of the CWA, 33 U.S.C. § 1362(14).

49. Fill 1 conveys discharges of groundwater and surface water into UMT/Slick Rock Branch RM 0.81 at or near its toe.

50. Fill 2 conveys discharges of groundwater and surface water into UMT/UMT RM 0.05/Slick Rock Branch RM 0.81 at or near its toe.

51. Fill 3 conveys discharges of groundwater and surface water into Slick Rock Branch at or near its toe.

52. Slick Rock Branch flows into Pigeon Creek, which flows into the Tug Fork of the Big Sandy River, which is navigable-in-fact. Those are all waters of the United States as that term is used in the context of the CWA, 33 U.S.C. § 1362(7).

53. Total dissolved solids (TDS), sulfates ($SO_4^{2-}$), the other ions associated with the measure of conductivity in surface coal mine drainage, and selenium are all pollutants under the CWA, 33 U.S.C. § 1362(6).

54. Neither Defendant nor any other entity possesses a permit to discharge pollutants from the Parcel 57 Valley Fills into Slick Rock Branch and its tributaries.

55. In light of the nature of pollution discharges from valley fills and in the absence of any evidence that Defendant or any other party has made efforts to prevent future pollution discharges from the Parcel 57 Valley Fills, Plaintiffs allege that Defendant has committed additional unpermitted discharges since November 2013, and is in continuing violation of the Clean Water Act.

### *Plaintiffs' October 23, 2014 Notice of Intent to Sue*

56. Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on October 23, 2014, to Defendant, notifying it that its ongoing unpermitted discharges of (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, and (4) selenium from the point sources described above violate the Clean Water Act.

57. The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations at the end of the 60-day period required by statute.

58. The NOI was sent by certified mail, return receipt requested, to the following persons: Defendant; Defendant's Registered Agent for Service of Process; Secretary Randy Huffman, WVDEP; Shawn M. Garvin, Regional Administrator of EPA Region III; and Gina McCarthy, Administrator of EPA.

### **FIRST CLAIM FOR RELIEF**

59. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 58 supra.

60. Defendant's wastewater discharges identified in the above paragraphs are discharges of pollutants from point sources into navigable waters of the United States within the

meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

61. Defendant does not hold a WV/NPDES Permit to authorize the discharge of (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, or (4) selenium, from the Parcel 57 Valley Fills to Slick Rock Branch of Pigeon Creek of Tug Fork.

62. Under Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), the prohibition against unpermitted discharges under Section 301 is an "effluent standard or limitation" subject to enforcement through the citizen suit provision at Section 505(a)(1) of the Act. 33 U.S.C. § 1365(a)(1).

63. As established by Plaintiffs' and WVDEP's sampling, Defendant discharged (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, and (4) selenium into Slick Rock Branch of Pigeon Creek of Tug Fork in violation of Section 301(a) in December 2012, October 2013, and November 2013.

64. On information and belief, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act as a result of its ongoing pollutant discharges because Defendant has taken no meaningful action to eradicate the underlying cause of the discharges or to obtain a permit for the discharges.

65. Because of its unpermitted discharges, Defendant is in violation of the prohibition in the Clean Water Act on discharges of pollutants without a permit. 33 U.S.C § 1311. This prohibition is enforceable pursuant to Sections 505(a)(1) and 505(f)(1) of the CWA, 33 U.S.C. §§ 1365(a)(1), 1365(f)(1).

66. Unless enjoined, Defendant will remain in violation of the Clean Water Act.

67. Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365, Defendant is liable for civil penalties of up to $37,500 per day for its unpermitted discharges.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1. Declaring that Defendant has violated and is in continuing violation of the CWA;

2. Enjoining Defendant from allowing further unpermitted discharges of (1) total dissolved solids (TDS), (2) sulfates ($SO_4^{2-}$), (3) other ions associated with the measure of conductivity in surface coal mine drainage, and (4) selenium;

3. Ordering Defendant to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

4. Ordering Defendant to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

5. Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

6. Granting other such relief as the Court deems just and proper.

Respectfully submitted,

/s/ Amy Vernon-Jones
Amy Vernon-Jones (W.Va. Bar No. 12027)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9002
*Counsel for Plaintiffs*