UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY, and
SIERRA CLUB,

    Plaintiffs,

v.                            Civil Action No. 2:15-15515

POCAHONTAS LAND CORPORATION,

    Defendant.

MEMORANDUM OPINION AND ORDER

Pending is the parties' joint motion for entry of the proposed consent decree (ECF No. 57), filed February 3, 2017.

I. Procedural Background

Plaintiffs Ohio Valley Environmental Coalition ("OVEC") and West Virginia Highlands Conservancy, Inc. ("WVHC") are nonprofit organizations focused on environmental issues, including water quality issues and the protection of surface waters. Plaintiff Sierra Club is a nonprofit corporation focused on environmental protection issues, including the exploration, enjoyment, and protection of surface waters. Plaintiffs filed their complaint with this court on November 11, 2015. The

complaint alleges that valley fills[1] on land owned by Pocahontas Land Corporation drained contaminants into unnamed tributaries of Pigeon Creek without a National Pollution Discharge Elimination System ("NPDES") permit, in violation of the federal Clean Water Act, 33 U.S.C. § 1311.  The complaint alleges three unpermitted points of pollution: Fill 1, located at UMT/Slick Rock Branch RM .81; Fill 2, located at UMT/UMT RM .05; and Fill 3, located in Slick Rock Branch.  The complaint seeks declaratory relief that defendant has violated and continues to violate the Clean Water Act; civil penalties for each day of violation; injunctive relief requiring defendant to conduct monitoring and restore the environment an uncontaminated condition; as well as attorneys' fees and expenses.

On December 2, 2016, the plaintiffs lodged their proposed consent decree with this court.  Pursuant to 33 U.S.C. § 1365(c)(3), the United States had until on or around January 23, 2017 to review the proposed consent decree.  By letter filed January 13, 2017, the Department of Justice, Environment and Natural Resources Division notified the court that the United States had reviewed the proposed consent decree and did not object

---

[1] Valley fills are a common feature of Appalachian surface coal mining and result from the placement of excess rock and soil generated by mountaintop removal.

to its entry. On February 3, 2017, the parties filed their joint motion for entry of the proposed consent decree.

## II. Proposed Consent Decree

The proposed consent provides that within ninety days of the effective date of the consent decree, the defendant will undertake a good-faith effort to apply for a NPDES discharge permit from the West Virginia Department of Environmental Protection ("WVEP") to cover the discharge of pollutants from Fills No. 2 and 3, and that the permit be "diligently pursued." To that end, sampling for selenium, conductivity, total dissolved solids, and sulfates will be conducted twice monthly at each of the valley fills. The results of the sampling will be provided to plaintiffs, and all results will be included in the application for a permit. The sampling will continue until a permit application is submitted.

Defendants will provide a copy of the permit application to plaintiffs' counsel within seven days of its submission, and similarly provide to plaintiffs a copy of any permit issued within seven days of its receipt. The consent decree terminates when a valid NPDES permit has been obtained to authorize the pollutant discharge, or eighteen months following the effective date of the decree, whichever occurs first. The decree does not waive

plaintiffs' right to bring a new action based on discharges that may occur after the consent decree is terminated.

The parties state that consent decree resolves the plaintiffs' civil claims for the violations alleged in the complaint, as well as any other unpermitted discharges of pollutants from the valley fills they may occur prior to termination of the consent decree.  The decree also dismisses, with prejudice, any of plaintiffs' claims relating to Fill No. 1.

### III. Analysis

The Fourth Circuit Court of Appeals has observed that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." <u>Szaller v. American Nat. Red Cross</u>, 293 F. 3d 148, 152 (4th Cir. 2002) (quoting <u>Smyth v. Rivero</u>, 282 F. 3d 268, 279-80 (4th Cir. 2002).  It expanded upon this principle in <u>Smyth</u>, observing that a court is expected, when presented with a proposed consent decree, to scrutinize the accord and make certain findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court. As Judge Rubin noted in <u>United States v. Miami</u>,
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require

4

> more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.

664 F. 2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

Smyth, 282 F.3d at 280.

The standards governing consideration of a proposed consent decree are described further by United States v. North Carolina, 180 F. 3d 574, 581 (4th Cir. 1999):

> In considering whether to enter a proposed consent decree, a district court should [1] be guided by the general principle that settlements are encouraged. Nevertheless, a district court should not blindly accept the terms of a proposed settlement. See Flinn v. FMC Corp., 528 F. 2d 1169, 1173 (4th Cir. 1975). Rather, before entering a consent decree the court must satisfy itself that [2] the agreement "is fair, adequate, and reasonable" and [3] "is not illegal, a product of collusion, or against the public interest." United States v. Colorado, 937 F. 2d 505, 509 (10th Cir. 1991). In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. See Flinn, 528 F. 2d at 1172-73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." Id. (internal quotation marks omitted.) In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." Carson v. American Brands, Inc., 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, Circuit Judge, dissenting), adopted by Carson v. American Brands, Inc., 654 F. 2d 300, 301 (4th Cir. 1981) (en banc) (per curiam).

Id. at 581.

Concerning the extent of discovery conducted and the stage of proceedings, the court notes that discovery in the matter concluded on July 28, 2016, and that both parties submitted motions for summary judgment, both of which were pending at the time the proposed consent decree was reached.  With the exception of claims related to Fill No. 1, which the plaintiffs agree to dismiss, the consent decree provides for injunctive relief commensurate with that sought in the complaint, namely, to bring defendant into compliance with the permit requirement of the Clean Water Act regarding discharges from valley fills on its property.  The consent decree is limited in duration to such time until defendant obtains a valid permit for discharges, or eighteen months after the effective date, whichever is sooner.  The consent decree provides for attorneys' fees of $34,480, broken down by lodestar, and $14,000 in costs and expert expenses.  The parties agree that no civil penalties will be requested from defendant for conduct that occur prior to the termination of the consent decree.

In consideration of these factors, the court, accordingly, finds that the proposed consent decree serves the public interest and is fair, adequate, and reasonable, and, further, is neither illegal nor the product of collusion.  In view of these findings,

and inasmuch as no person has herein opposed entry of the proposed consent decree, the court ORDERS as follows:

1. That the parties' joint motion to enter the proposed consent decree be, and it hereby is, granted;

2. That the proposed consent decree be, and hereby is, entered this same date; and

3. That this action be, and hereby is, dismissed and stricken from the docket, with the court retaining jurisdiction pursuant to Article X of the consent decree and any other provision therein contemplating the potential for future action by the court.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

ENTER: March 14, 2017

John T. Copenhaver, Jr.
United States District Judge